We hear the next case on the calendar, Aretakis. May it please the Court, I want to symbolically stand up on this podium and shout, I filed this case in New York State Supreme Court. That's where I wanted the case, that's where I was familiar with the rules. And that fact, I believe, hovers around all of the other issues in this case. The defendants remove this case to this Court automatically with different rules, different procedures, different ECF filing requirements. And then, they not only, for lack of a better term, screw up the ECF filing rules of this Court, they fail to correct these errors. Can I ask you something which I'm having trouble understanding? You spend a lot of time, as I read your brief, saying that the district court, and correct me, the appellee's motion to compel arbitration, given that it was not properly filed on the district court, on the electronic docket. But where was the prejudice? I don't see the prejudice. Where was the prejudice, Your Honor? Didn't you, at the end of the day, ultimately file a response in opposition to the motion? Yes, I did, Your Honor, and I was not aware of these errors that occurred until I filed my appeal. And then, I personally came to this Court on several occasions. So, in your, just so I'm clear, in your opposition to the motion below, did you ever argue that it was improperly filed and thus should not be considered? Your Honor, in all candor, I didn't even find out until nine months later, until I came here to perfect my appeal. So you are correct, Your Honor. It did not affect me. It did not hurt me. It did not prejudice me. However, when I came to this Honorable Court to file my appeal, and the clerk told me on multiple occasions that their motion for dismissal was not properly ECF filed, and you, Mr. Aratakis, cannot make it part of your record, therefore you can't argue from that. So, you're saying that, and again, if I'm misunderstanding. No, you're exactly on so far. You're saying that the motion to compel arbitration was filed defectively, and therefore, the attached exhibits, including the relevant contracts, should not have been considered below? Your, Your Honor, that's a backup argument. And in all candor, again, Your Honor, I— Because if you say that, then what is it that we're supposed to consider? How can we consider anything? Your Honor, on the merits of this, I believe I should win. However, based upon the research that I've done, and the ECF filing errors, and the case law I have found in that regard, and the appellate mistakes that they have made, I believe I should also be winning on a technicality, because the ECF filing was wrong. You are absolutely correct that in the lower court, I was not prejudiced. I didn't even know they made an ECF filing error until nine months later I came to recover and retrieve the docket so I could file an appeal. Why don't you move to your main argument, since this is a backup argument. Thank you, Your Honor. I do believe, though, that they are bound to follow the ECF filing rules of the court that they themselves chose. And I believe they're trying to say it's a harmless mistake. Just to be very clear, my argument is very, very brief. There are three different Erratakis parties in this case. My Uncle Manny, or Emanuel Erratakis, is a 90-year-old blind maker of the will, and I'm the executor of his will, and I'm John Erratakis. The third Erratakis is Alexander Erratakis, who works for the appellant, First Financial. He was their stockbroker, power of attorney, trustee, tax advisor, beneficiary of a will and a trust, and someone who I had to have alleged in the complaint to have taken, stolen, or misappropriated hundreds of thousands of dollars. And he submitted an affidavit in support of their motion saying, yes, our uncle was blind, but he wasn't totally blind. And I would have it that he's completely conflicted. He has a fiduciary obligation to Emanuel Erratakis and to the will and to the trust and to his accounts. And now, because he's conflicted by his own employer and asked to give an affidavit, he's their main witness in support of this arbitration provision. But I will say, to get right to your point, Your Honor, about the underlying facts of this case. I think there's no dispute here that they say, when you open the account, the opening of the account contract said, this is subject to arbitration, and the arbitration agreement is going to follow in the mail in a few days. And we have documentation and records in the case that they sent my 90-year-old blind uncle the arbitration agreement a few days later by regular mail that he never agreed to, never signed off on. Yes. Now you're getting to the question. The original agreement spoke of arbitration. Yes, sir. And then said, more details will follow. There was a signature that said, I have read these things that weren't yet there. So the question is, under New York law, is the fact that the original agreement spoke of arbitration enough to constitute a contract to arbitrate, even though the later stuff, the details weren't there? Or can there be no contract to arbitrate unless the person had seen these other things, which he clearly did not see at the time he signed? That's the question that I have for you and that I will have for the other party. Because the district court never talked about that. And so I don't know what the answer to that question is. Your Honor, I think you've walked into this fundamental issue in this case. There is no meeting of the minds on the specific arbitration language. It doesn't follow until it's regularly mailed. So I'm interested in this question, because does it have to be a meeting of the minds on the specific arbitration language? Or is it enough that you signed something, understanding that you are signing a contract that has an arbitration agreement, that binds you to arbitration? Which then the arbitrators decide. Would decide that, right. I'm going to wander around that question. Don't wander. Answer the question. I want to come back to it. Answer my question. I believe that the equities in this case, that you have to look at the entire global picture. It's not a matter of equities. It's a matter of what our law is, and what New York law contract is, as to when an agreement to arbitrate is there. Because if an agreement to arbitrate is there, then the equities of the case are all to be given to the arbitrator. It's not that arbitrators are nasty, evil people. If the agreement to arbitrate is not there, then it is up to the court to say there has not been an agreement to arbitrate. If it is uncertain, it is up to the court to decide. And whether the district court decided that or not is a question, because it didn't speak to it. But its equities have nothing to do with that, because the arbitrators can be just as equitable, perhaps more equitable than we are. I believe the courts in New York state say that when you do have an arbitration provision, you better write it very specifically. You better be very cautious about it. You better set it out in detail. You better let the person know what they've gotten into. What if hypothetically... When you say you believe that the New York courts say that, is there a citation? No. Generally, my research has indicated that these arbitration provisions... I know this. I want some New York case that says that what there was and was actually signed to and given at that time was not enough. Your Honor, the only way I can answer that without knowing all of the laws and the case law on that point is by saying, hypothetically, what if the arbitration provision said, if you lose arbitration, you have to give us your firstborn son and daughter? How can you be subject to something that follows later on? It's not contractually binding. And also, I want to say this, the maker of the contract is this large corporation. They drafted the language. They had their procedures. My uncle signed something. He was blind. You can see the signatures never come close to the line. And they want you to say that his nephew explained it to him, explained arbitration, explained documents would be coming in the mail. And they hand someone a form, and they sign the form. And under the circumstances, I'm sorry to say, Your Honor, I apologize for not having the case law. I throw myself on the mercy of the court to know that there is case law, that overall the context of this case is that they did not follow their own procedures. They hand the customer something that says, we're going to bind you later on to a whole bunch of things that come in the mail later on. One thing I'm not clear about, I understood you to be challenging the validity of the contracts. Yes, I am. Rather than the validity of the specific arbitration provisions. I'm challenging both. My uncle was blind. My uncle was blind. You spend a lot of time on the validity of a contract. Today, partly in answer to my question, you're challenging the specific arbitration provision. Did you challenge that adequately below, or was that forfeited? I believe I challenged that. I believe I set out, I had a plethora of objections to the entirety of the circumstances of my was conflicted in many different ways. They never deny that. You've told us all that. I think you've given me that. Thank you. Thank you very much, Your Honor. I believe I reserve just one minute. Two minutes. Thank you. But if you want to do one minute, that's fine. We'll tell you later. Good morning, Your Honor. May it please the court. My name is Jonathan Neerman, and I'm here on behalf of Abhel Lees. Your Honor, the Supreme Court and this court for more than 50 years have consistently favored a policy of enforcing arbitration agreements. Where there is an arbitration agreement, and the question that I want to know is, did the district court find that the mention of arbitration with details to follow later, when those details to follow later were signed for were clearly not before the person, whether that constitutes in New York a valid agreement to arbitrate. Now, that is a question basically of New York contract law, and I don't know that the district court found that. So we can do one of three things. We can send it back to the district court and say, make a finding on this. We can say, on the basis of what we know, this is enough or not enough, or we could certify to New York of all . . . even I am not likely to push for that. Well, Your Honor, I'm sure it's a little shocking to know that I believe the record is clear that you can affirm the district court's opinion as it currently reads. Let me tell you what the district court was asked to look at by appellant. Appellant, as the Chief correctly identified below, specifically attacked the contract as a whole, the validity of the contract. He certainly did, and as he did here, spent a great deal of time talking about that, but ultimately, the question is, did he also, in the middle of all this other stuff which would not go to that issue, also raise that issue adequately? Because he tells us that he did, and then goes on and talks about all the other stuff. One can understand perhaps why the district court didn't specifically answer that question if that question was asked, and then many other things, but if a question was asked, then we have a right to have an answer to it, unless we can give the answer to it. And, Your Honor, let me tell you what the evidence below, the record below and the record before this court shows. There are two arbitration . . . there are two contracts that Mr. Arutakis signed, not this Mr. Arutakis, but the account holder. In 2008 and 2010, there is no argument below or argument here that the 2008 agreement is invalid. And in both agreements, the 2008 and 2010 agreement, in both agreements, the following language is found. It says, I further acknowledge that I have read and understand the pre-dispute arbitration clause located on page 7 in paragraph 35 of the cash account agreement section of the customer information brochure, and agree to resolve any disputes arising out of my account by arbitration. When he signed that, what did he have in front of him? Did he have the . . . is there any evidence about what he had in front of him? He had this account agreement, Your Honor, which is supplemental appendix page 33. Nothing more than that. He did not have the later documentation on what arbitration was, which he nonetheless signed that he had seen when he could not have seen it, right? In the . . . So your argument is that this signature on what he did sign and have before him is enough to constitute an agreement to arbitrate regardless of whether he saw, was misled, or whatever about anything else? That is correct, Your Honor. Additionally, you asked about the New York State law and the law of this circuit. In the case that we cited, Pagadawan, in the Pagadawan case, the court held that the signatory is presumed to be bound by the terms of another document specifically incorporated by reference in the agreement that that party signed. And I would submit to Your Honor that that's exactly the situation here. Even if he says he saw it and didn't? Correct, Your Honor. That other case didn't involve that. I mean, you can sign, but you'll be bound by something you haven't seen. Right. But it's rather different to say I'm bound by something I haven't seen which I have seen when you haven't seen it. Right. But in the Pagadawan case, the court clearly said that if the document to be incorporated by reference is clearly referenced in the agreement that you signed, then that is sufficient for you to be bound by that. And because the agreements that Mr. Arataka signed both in 2008 and 2010 specifically referenced the page and line number of the subsequent customer information brochure that provided additional information about the arbitration, I would submit that he is bound by those as well. What is the rationale for the practice, if it is a practice? It's a great question, Your Honor. Can I finish my question? Yes, sir. Sorry. What is the rationale for the practice of sending the brochures afterwards? Why not have the brochures available at the time that the person is considering whether to sign? I hope that's still a great question. It is still a great question. In this scenario, Your Honor, we have two different parties. We have the clearing firm and the introducing firm. And I know this court is familiar with the difference between the clearing firm and the introducing firm. In this instance, the clearing— Walk us through it. Sure. In the traditional large wire houses, Merrill Lynch, Goldman Sachs, UBS, they have both the front office and the back office. In other words, I think of it like a car dealership, Your Honor. You go in and you meet the salesperson, but when you're actually consummating the deal, you go in the back office and you sign the paperwork. I'm not sure you want to analogize this to buying and selling cars. But for smaller broker-dealers, for smaller firms that do not have the capability of printing out account statements and don't have the capital to custody customer accounts, they have to contract with what are called clearing firms. In this case, it is Southwest Securities, now known as Hilltop Securities. Because of the smaller introducing firms like First Financial cannot and do not want to have the burden of creating their own account documents that meet the requirements of the SEC, the Stock Exchange, and now FINRA, they rely on the clearing firms to provide to them stock account agreements and other opening documents for all of the variety of services that the firms provide that the introducing firm can then use with their customers. In this case, in 2008 and 2010, the introducing firm, in this case First Financial, provides the account opening documents to the customer, the customer signs, and then that goes to the clearing firm. The clearing firm assigns an account number and lets the introducing firm know that we've opened the account number, we've opened the account on behalf of your customer, and we are sending out to your customer all of the other required information. Why do you ask the person to say that they have received what they have not yet received? See, I understand the procedure, and the case would look quite differently to me if the person has said, I signed this, I agree to arbitration, I will see later some details to which I will be bound, whether I like them or not, because I don't care now. But what is before us is an odd situation where the person is saying, I am bound because I have seen some things which I haven't seen, and that, I don't quite see the rationale for doing that. I mean, I understand the two-step thing, but I don't see the rationale for asking him to sign and say something which isn't true. And Your Honor, I can't explain that right now. I can tell you that as I read this arbitration agreement in the account agreements that Mr. Aratakis actually signed, I believe that the language provided in that signature . . . It's clear enough. It's clear enough. That's what you believe. Yes, sir. So your view is that, as I understand it, even if we were to discard the brochures, there still would be a valid agreement? That's correct, Your Honor. Because of the language? Because of the language that are provided in the new account agreements. What is that language again? Where is the language? Yes, sir. Well, I'm looking at one, Your Honor. It's Supplemental Appendix 33, and that's . . . You read it to us before. Yes, sir. Would you want me to read it? I'm sorry. Yeah, yeah. That would be helpful. I further acknowledge that I have read and understand the pre-dispute arbitration clause located on page 7 in paragraph 35 of the cash account agreement section of the customer information brochure and agree to resolve any disputes arising out of my account by arbitration. Yeah, but the first part is not true because they haven't read that. And so you are saying that the second clause, I agree to be arbitration, is sufficient to establish arbitration even though it follows a statement which is not so. That's correct, Your Honor. I would submit that in this case, however, the New York law would support a finding that the customer information brochures, even received after the fact, would also support arbitration. We have no information about New York law, and the district court, in making its finding, didn't ask for briefing on New York law or any data on New York law. And you know, it may be that New York law is as clear as you say, but how can you ask us to say it? You know, it may be that New York law goes every which way, in which case, perhaps our certification would then be sensible. Or it may be that New York law is quite clear that that is not enough. But how do I know what New York law is? Neither of you briefed it, and you haven't briefed it to the district court. And the district court's holding doesn't say anything about it. You see my problem. I mean, you may well be right that that's enough. Your Honor, I've run past the time. I'd like to answer your question, though, if I can. I'm sure the Chief Judge will let you. Certainly. Your Honor, to your first point, I don't think that Judge Forrest addressed it in her order because it was not properly before the court. The attacks as to the validity of the 2010 agreement before the district court was to the validity of the entire contract, not the arbitration agreement. That's number one. That's your first argument. Of course. If he forfeited that, that is one thing. Okay. But number two, I do believe that the Pagdawan case does address Your Honor's concern . . . That is a summary order, right? The Pagdawan? I believe so. Yes, sir. We've not said anything of the sort that you're suggesting we've said in an opinion about New York law. Right. Well . . . What do you think about the aggressive insurance company, a 1993 Second Circuit case? I think it interprets New York law. I don't know if it's wholly decisive in this case. Your Honor, I don't think I have that in front of me, but I can certainly look at that and submit anything. 991 F. Second, 42. You can certainly take a look at that, Your Honor. I would also . . . well, I've run past my time. Your Honor, I'm happy to answer any other questions the panel might have. Thank you. Thank you. We've grilled you very heavily. Thank you for being responsive. Thank you, Your Honor. Your Honors, I believe that if it affirms the lower court, this court would be making a finding adverse to the customer, to the little guy, to an elderly blind gentleman, in spite of the fact that they're admitting to you that they engage in some bad practice, in spite of the fact that they're admitting . . . Could you answer me one question? Yes, sir. When and where to the court below did you raise the question that this signature was not an adequate agreement to arbitrate because he had not seen the broader brochure? Your Honor, I believe I argued a broader question than that. I know you argued a broader question, and I'm not interested in the broader question. I want to know if you retained that argument, and I want to know where in your argument to the district court did you say something which would have alerted the district court in some way, not that specifically, but in some way that it should address the question. You have made broader arguments. We have heard them. I'm asking this question. I believe I said it when I said this one-page contract should have been read to my uncle, and it should have said at the bottom of it, this has been read to this man because he has a vision impairment or is blind. I made that argument. Is that what you're resting on? So an answer is just . . . No. That's the best answer I've got, Your Honor. It's the best answer because I do not recall every point I made in the brief. I felt very, very frustrated by one fundamental principle, which is it appears that everyone involved in the legal system from the top to the very bottom says, arbitration? Send it off there. Win-win. It's just send it off. We are bound by what the Supreme Court has said about arbitration. Whether we like arbitration or not is irrelevant. All of that is irrelevant. That's where we are. Thank you. You answered my question. Thank you. And I'd like to just rest with one final sentence. My esteemed colleague, this fine gentleman, said, I believe can sum up the entire argument. Your Honors, I really can't explain that right now. That was his answer to the question, and I believe that that's paramount to this entire proceeding. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision. The final case, Sierkowski v. Nielsen, is on submission. The Clerk will adjourn Court.